at all. Mr. Tate will begin with argument from you, your honor. May it please the court councils. On September 24th of 2021, right? I apologize. I am here on behalf of the estate of Jesse Leonard through the duly appointed representative, her mother, Rae-Jean Reynolds. On September 24th of 2021, 16 shots were fired by four officers of the IMPD at Jesse Leonard while she sat on her front porch. Those were officer Sheets, officers Reynolds, officer Shelton and Smith. Now what precipitated that was a 25 minute period where the officers were on scene and they were continually enhancing. At least at one point, one officer asked a tow truck to come because all they were there for is a fleeing traffic stop. That's all they were there for. And at one point, I believe it was officer Shelton actually asked that tow truck driver to take a longer time, extend this out. And what we're here asking for today is that the court overturn and reverse the district courts finding that a reasonable jury could not find that the actions of these officers were unreasonable. And there's two main reasons that we're asking the court to do this. The first is that the district court failed to properly review under the totality of the circumstances standard. The court's review, I believe it's on page 14 of the court's order, which is appendix 15, restricts its review of the totality of the circumstances to a set of seconds. So an under 10 second period of time. From our view and from the binding precedent within the Seventh Circuit, it's our position that the court should have taken into account the totality of the circumstances. So why they were there, how long they were there, what they did while they were there, what they saw. What they saw was an individual that they believed to be intoxicated on that front porch or undergoing a mental health episode, as all the officers have testified to. What they knew was they had an individual they believed to have a weapon in her waistband. And instead of taking that all into account and approaching this situation in a level manner or contacting their supervisors or any of the other multitude of choices, these officers approached Ms. Leonard in a single file line. She asked them to stop. They did not. She asked them again to stop. They did not. She asked them again to stop. They did not. Then the weapons were drawn. From here, Ms. Leonard grasped the gun and started to take it out of her waistband. We do not dispute that there was a gun. We do not dispute that she grasped it. We do not dispute that she started to take it out, as the district court found. What we dispute is how the appellees have painted a picture of a gun being pointed with a selective screenshot that has been used over and over, as was seen in the brief on the appellee's brief. Let's put the grasping and pointing to the side and focus in on imminent risk of serious bodily harm. As I understand your argument, Mr. Tate, rather than 10 seconds, you're asking us to look at 25 minutes. Yes. So we have this towing of the vehicle going on. All of us have watched all the videos. So we see that. That takes some time. The officers are on the scene for some time. For part of that time, she's out on the porch, the open-air porch. Is it your contention that it would have been reasonable for the officers to engage in the discussion with her about the towing of her car without approaching her house or the house she was living in? Well, so they did approach her at one point in the beginning. So it's kind of two separate instances, because they approached her for the towing towards the beginning of the incident or being on scene. And then there was the second approach, which had nothing to do with the towing of the vehicle. At that point in time, it was solely so that Officer Smith could identify to see if she was the individual that was driving the vehicle that fled the traffic stop. So I think it's kind of a two-part answer to what your question is, Your Honor. But taking into the totality of the circumstances, the court went on. It went further on and actually weighed the evidence. And part of that, and that's one of the biggest issues, is it weighed her statements. It took her statements and said the officers reasonably could believe that those were threats. That is not the district court's authority to weigh conflicting evidence and find in the favor of the movement. So from our perspective, the district court's ruling failed in two ways. One was failing to take into account the totality of the circumstances for the whole period of time. And we understand we are not standing here saying that the pre-seizure actions can be the sole basis for an excessive force claim. Seventh Circuit's clear that's not the case. But the Seventh Circuit's also clear that it still is taken into account in the totality of the circumstances analysis, which is what we are asking the court to do with their de novo review and review the totality of what occurred over this 25 minute time that resulted in the death of Ms. Leonard. For the, just touching on the threat again, and we outlined obviously what our position is with Sand Zone. Pelley's outlined their position on Sand Zone. I think that case, I think this case can be decided and it can be consistent with Sand Zone for the reasons we laid forth. But primarily, the factors, and they're not the sole, again it's not the sole factors, but two of the main factors considered in Sand Zone were the threat and the pointing of the gun. And to sit in the shoes of the jury and say that a reasonable juror could not sit there and not consider that a threat. Consider that to be a plea of someone they knew or believed to be intoxicated, to be under a mental health episode. That's where the issue arises for us. Mr. Tate, can I confirm one thing in your brief, and I appreciate your candor on this. One of the things that you indicated is that there is no challenge, at least on appeal, to the police's entry onto the property. Correct. Right? It's just the excessive force issue. Correct, Your Honor. That is correct. Yes, upon our review of the court's order, we do not feel proper to appeal that issue. I see my time is winding down, unless there's any further questions. You can reserve the remainder of your time. Yes. Thank you, Mr. Tate. Mr. Will will go to you now. Good morning. Good morning. May it please the court, my name is Alexander Will. I'm here on behalf of the city of Indianapolis. The trial court in this case correctly found the individual officers acted reasonably in the use of force against Jesse Leonard when they were presented with the following factors. A drinking and intoxicated suspect who drove recklessly while fleeing from police in a vehicle, who threatened police officers with, I don't care, don't come no closer, when they casually approached to talk to her, who lifted her shirt and exposed a concealed firearm in her waistband, who reached for and then missed that firearm when officers indisputably told her, don't do it. And then she still grabbed for and removed that firearm from her waistband and began to push it out towards officers in an attempt to point it at them. The officers had only fractions of a second to make a decision as to whether, as to determine whether they needed to defend themselves. No reasonable jury could conclude in these circumstances that Keith Shelton, Joshua Smith, Joseph Reynolds, or Dylan Sheets acted unreasonably when confronted with this situation. Therefore, we ask the trial court's grant of summary judgment should be affirmed. At the outset, the trial court applied the appropriate standard in this case. The reasonableness determination is the operative question, as the Supreme Court recently found in the county of Los Angeles versus Mendez case. And the reasonableness determination is in Grand versus Connor and every case since then has been that it's from the officer's perspective and not from 20-20 hindsight. What the plaintiff has asked this court to do is to view it from Ms. Leonard's point of view. They have asked her to speculate that she was scared, that she was throwing a firearm away, and that she perceived the officers as a firing line when the evidence does not support this. The court should not accept that invitation. Instead, it should view the perspective of the officers as it's required to do on the grant. From that perspective, the officers approached the suspect casually. They attempted to say, hey, I need to talk to you, okay? They said, in fact, they started it with, how are you doing? The officers did not have their firearms drawn. They casually approached. There were four of them. The evidence, I don't think, establishes a line or a fiery line, as plaintiff identifies in this brief. Instead, the evidence establishes that Officer Smith approached Ms. Leonard to identify her as a suspect. He did that before he stepped a foot on the property. Then you have Officer Shelton who testified that he approached to the left because he was concerned Ms. Leonard was going to run again. Officer Sheets said the same thing, and that's why he approached from the right along the sidewalk. That was the sidewalk approach to the house. Does the record indicate when she comes out onto the porch in relation to either the Honda being towed or the officers approaching? She was on the porch the whole time.  She never left the porch. In fact, the officers testified they thought it was very strange that she never entered the house. She didn't appear to have access to the house to them. That's one of the reasons they stayed on scene. The house was a friend or something, right? Correct, and she didn't have a key. She'd stayed there, and she testified she'd stayed there, but she didn't have a key and couldn't access it at the time. The officers in Plaintiff's Counsel have said that the officers escalated or continually enhanced the situation. I don't think the evidence supports that at all. The officer testified in their training they're trained to de-escalate situations using things like time, barriers, and distance. And they utilize all of those under their own testimony in this case. They stretched out the encounter. In fact, they asked the tow truck driver to stay on scene to give them a reason to stretch out the encounter until Officer Smith could get there and potentially identify her. That was an effort to keep her calm. The officers stayed across the street. They didn't approach the property until Officer Smith got there. They stayed across the street. They put cars between her and them as they continued to talk and assess the situation. Additionally, the officers did make an assessment as they approached. Officer Smith said that he was approaching to talk to her. He didn't see indication to be concerned. Officer Shelton had been on the entire time. And again, he and Officer Sheets seemed to think that the only threat she presented was to run, although they were aware of the firearm. Additionally, the court did not re-weigh the evidence, and they did not exclude particular facts in the totality of the circumstances from their analysis. In fact, if you look at the court's opinion on pages 13 and 14, it would be 14 and 15 in the appendix, Judge Young specifically commented on the approach to the property and whether they escalated the situation. He specifically considered those factors. So the indication or the argument from plaintiff's counsel that they did not consider those, the court did not consider those, I think is just incorrect. Additionally, the officers' training supported their decision-making. The officers are trained that if a suspect shows their waistband to show a concealed firearm, they should be aware of that and they should be mindful of that area and that that is a threat to them. Officers are also trained about the reactionary gap, the time period it takes to physiologically respond. Officer Sheets in his deposition testimony said, someone will complete their action before you have time to react to it. That's part of their training. Our expert, Captain Ryan, talked about that as well, the reactionary gap. And this leads me to my next point, which is whether the officers had to wait for Ms. Slender to point the firearm at them before they reacted and fired their weapons. And that is absolutely not the holding of this court or any other court. The officers only had to wait until there was an imminent threat of harm. And the court's decisions in Sand Zone and in other cases like the Henning decision indicate that an officer does not need to wait until it's pointed at them or a suspect is shooting at them for them to make a decision on whether that imminent threat requires the use of deadly force. In fact, in the Henning case, the suspect had not even grasped the firearm before police officers were justified in their use of reasonable force on a suspect. Judge Young cited to a Tenth Circuit case, Valerde versus Dodge, where a suspect was actually reaching for a firearm and plaintiff's counsel later speculated that he was going to throw away the firearm. Court said, we're not going to speculate on that. It was the officer's perspective and it was reasonable for them to believe that grasping for a firearm was an imminent threat. Similarly, in Valdera's case out of the Fifth Circuit, Judge Young cited to this as well. In that case, the suspect actually discarded a firearm and the police did not see the discarding of that firearm. And the court said that was still reasonable as a matter of law and found summary judgment on the first aspect of the qualified immunity analysis. Finally, the officers did not escalate the situation. We talked about how they approached. We talked about their de-escalation training. And additionally, the Supreme Court has found in the County of Los Angeles versus Mendez that the escalation is part of the totality of the circumstances. An independent Fourth Amendment violation is not significant and is not sufficient to establish a constitutional violation under excessive force analysis. If there are no further questions, I'll see the remainder of my time. Thank you. We ask that you affirm the opinion of the trial court and find summary judgment in favor of the officers on this case and the City of Indianapolis. Thank you. Thank you, Mr. Will. Mr. Tate, we'll go to you now for a rebuttal argument. What was just said is one of our greatest concerns about what this case presents. And that's the potential to create a bright line rule that does not exist in the Seventh Circuit. What is just said was the individual grasping the gun created a threat of imminent harm that justified deadly force. This is not the law in the Seventh Circuit. And in upholding a decision where that is the opinion, it risks greatly deviating from what the historical Seventh Circuit's position is on the presence of weapons at the time of the use of deadly force. You have cases where an individual has a shotgun in their lap. You have cases where individuals are threatening to commit suicide. You have cases like San Zone, the State of Williams. There are cases where it is clear precedent in the Seventh Circuit that just possessing a firearm, just holding a firearm, is not permissible to be the sole basis for the use of deadly force. And I just want to agree with the appellee's counsel as well. Page 14, Judge Young considers that 10-second period as the totality of the circumstances. That confirms our concern, which is why the court did not apply the totality of the circumstances to everything that occurred in that 25-minute period of time. And for those reasons, unless there's any other questions, we request the court reverse the district court's opinion and remand for the matters that are set forth in the briefing. Thank you very much, Mr. Tate. Thank you very much, Mr. Will. The case will be taken under advisement. Thank you.